JOSEPH LENKOWSKY, et al., Plaintiffs

v.

JEROME SOLOMON, et al., Defendants

## Civil No. 7-1949

## District Court of the Virgin Islands

Div. of St. Thomas and St. John at
Charlotte Amalie

## May 14, 1949

DUDLEY & HOFFMAN, St. Thomas, Virgin Islands (GEORGE
H. T. DUDLEY, St. Thomas, Virgin Islands, of counsel),
*for plaintiffs*

MOORE, *Judge*

I have considered all of the evidence very carefully
as presented by both sides and I have examined all the
exhibits in the case. The contention of the plaintiffs is,
that this was a loan to the defendant, Jerome Solomon,
in the sum of $10,000.00 as evidenced by a promissory note

and was advanced by the plaintiffs as a loan upon certain real estate as security therefor; that the said lien has now become a first lien upon the said property; and that this is a suit to foreclose that lien created by plaintiffs' exhibit two in this case, and to recover the amount of $10,000.00 called for therein, together with attorneys' fees and costs of collection.

The contention of the defendant, Jerome Solomon, is that he did execute this promissory note together with the lien provision contained therein, but that this promissory note was executed in connection with the organization of a corporation and upon a verbal agreement between the parties that the corporation was to take over this piece of real estate, giving him certain interests in the corporation in stocks, as well as a certain amount of cash, and that this indebtedness of $10,000.00 was to be transferred to the corporation, and that thereupon he was to transfer to the corporation the real estate agreed upon at a value of $47,000.00, and receive $25,000.00 in stock.

The contention of the defendant, Harry R. Byers, Inc., in this case is that it is the purchaser of a bona fide first mortgage upon the said property and that any lien placed subsequent thereto or after its first mortgage should be considered as a second mortgage and asks that its mortgage be declared a first mortgage.

The plaintiffs in this suit have asked the Court for a judgment in the sum of $10,000.00 and that that judgment be declared a first lien upon the said property, and that the property be sold to satisfy the same together with costs and reasonable attorneys' fees.

The defendant, Jerome Solomon, has asked the Court in his counterclaim that his alleged verbal contract be declared in force and effect and that, in addition to the $10,000.00, he be awarded damages in the sum of $37,-000.00 from the plaintiffs herein.

■ The Court has considered all of these claims in connection with the evidence which has been heard. It became necessary, first, upon motion of the defendant, Jerome Solomon, that the Court determine from the evidence which it heard yesterday whether or not Attorney Dudley who appears for the plaintiffs in this case had previously represented the defendant, Jerome Solomon, in this matter and, as such, could not in good conscience appear as plaintiffs' attorney in this case.

The Court has already made its findings in that respect and has found that attorney Dudley was not acting as attorney for Jerome Solomon, but acted as attorney for the plaintiffs in this case and for the corporation which was being organized and that his appearance for the plaintiffs herein is not in violation of the canon of ethics, or of good conscience, and that he should be allowed to proceed as attorney for the plaintiffs in this case.

■ The Court also called attention to the fact in making that finding that at least. on four occasions the defendants had been in court with full knowledge that Dudley and Hoffman was the firm who had filed this case back in January of this year, and that attorney Dudley was appearing herein for the plaintiffs, and that on none of those occasions did they raise that question until yesterday morning which was the morning of the trial of this case, well knowing that the case had been specially set for trial at the request of both parties, both sides being aware that witnesses from out of town would be here for the trial of this case and that the Court would allow no further delays or continuances.

Now, as to the merits of the case. It is clear from all of the evidence that at the time this cause of action arose that defendant, Jerome Solomon, was in a very acute financial condition; that there was pending in this court

several attachment suits against this defendant totaling in all approximately $10,000.00, and that those attachment suits were ready to be heard and ready to go to judgment. It is also clear from the testimony of all the persons concerned in this case that at that time there were tentative discussions between the defendant, Jerome Solomon, and the plaintiffs, Ralph Paiewonsky and Joseph Lenkowsky, concerning the formation of a corporation and discussions as to the purchase of the property in question then owned by the defendant, Jerome Solomon. It is also clear that during that same time there were discussions between these same persons concerning the defendant Solomon's financial condition. It is also clear that those discussions were going along at the same time.

This court does find, however, that although those two discussions were going on at the same time they were independent of each other.

The Court further finds that the discussion as to the formation of the corporation and the purchase of this real estate did not go beyond the discussion stage.

The Court further finds that the loan, as made to the defendant, Jerome Solomon, was a personal loan on the part of these four plaintiffs to the defendant Solomon. This is further evidenced by the fact that the defendant, Jerome Solomon, himself, signed a personal note to those four plaintiffs and knew at the time that he signed this note that it was a personal note and not a note to the corporation. It is further evidenced by the last three paragraphs of the letter written by the defendant, Jerome Solomon, to plaintiff, Joseph Lenkowsky (plaintiff's Exhibit No. 14). It is also evidenced by the fact that in June of that same year the defendant Solomon made a trip to New Jersey and New York and discussed with plaintiff, Joseph Lenkowsky, and other prospective in-

corporators, the question of forming this same corporation.

The Court further finds, therefore, that there was no commitment on the part of anyone to subscribe to any stock in this corporation. This is further borne out by the fact that later, after a period of about nine months, all three of the incorporators, including defendant Solomon, voluntarily and of their own free will consented to a dissolution of this corporation, and signed a certificate of dissolution in order to effectuate the discontinuance of the said corporation which had not up to that time ever met or committed any official act.

██ Now, even if there had been any commitment to the corporation on the part of anyone, this court is of the opinion and finds that the consent of all of the incorporators to the dissolution of the corporation was a release by everyone, and it is clear that no one was coerced to sign. Therefore, it is immaterial whether the plaintiff asked the defendant to sign, or the defendant asked the plaintiff to sign. The important thing is that they all agreed and did consent to the dissolution of the corporation. In addition, this is further borne out by the fact that this corporation, during its existence, never performed any official act; it never had a meeting; it never elected a board of directors, and it never performed any act of any kind. This is also borne out by the fact that the defendant, Jerome Solomon, made no assignment of his property to the corporation, and that it was not bound by anything in writing, although our Statute of Frauds (1921 Code, Title II, ch. 9, §§ 1, 2, 5; 11 V.I.C. § 404; 28 V.I.C. §§ 241, 242) provides that such a contract would have to be in writing, and there was no transfer of the property in question to the corporation. This is further borne out by the testimony of the defendant, Jerome Solomon, who testified that he was offered $47,-

000.00 for this property about that time, and he refused to sell because his property was obligated to the corporation, and yet the defendant's testimony is to the effect that in the same month of June, while having conferences in New Jersey with plaintiff, Joseph Lenkowsky, and other groups and persons other than the Paiewonskys, he proposed to them that they should proceed to organize this corporation and that they could either include him in the corporation or take his property at a price of $47,000.00 and exclude him, which is tantamount to an offer to sell to them at $47,000.00. So that the defendant's testimony shows that he did try to sell this property to others outside of the group of the original incorporators, and the evidence of defendant Solomon himself in this respect shows that he did not at the time consider that he had any commitment which amounted to a verbal agreement to sell this property to these plaintiffs herein.

Now, in addition to the above findings which the Court has made, it is the opinion of the Court that even if the defendant Solomon's contention had been made out that there was a verbal agreement between the incorporators whereby they were to purchase, or the corporation was to purchase, this property, that such an agreement would be a violation of our Statute of Frauds which provides on page 20, chapter 9, section 2, as follows:

"Every contract for the leasing for a longer period than one year from the making thereof, or . . ." — and this is the part applicable to this case — ". . . for the sale of any lands, or any interest in lands, shall be void unless the contract or some note or memorandum be in writing, and signed by the party to be charged." (1921 Code, Title II, ch. 9, § 2; 28 V.I.C. § 242.)

Consequently, as to the defendant's contention in this case that the corporation or the incorporators agreed to purchase from him his property at a price of $47,000.00,

it would be the further opinion of the Court that such an agreement would be void under that section of the Statute of Frauds.

It is further the opinion of the Court that such an agreement would also be void under section 1 of the Statute of Frauds. (1921 Code, Title II, ch. 9, § 1; 11 V.I.C. § 241.)

It is also the opinion of the Court that such an agreement would also be void under section 5 of the Statute of Frauds which provides that "every contract for the sale of any goods, chattels or things in action, for the price of one hundred dollars or more, shall be void unless (1) there is a note or memorandum of such contract in writing; (2) unless the buyer shall accept and receive part of such goods, or (3) unless the buyer shall at the time, pay some part of the purchase money." (1921 Code, Title II, ch. 9, § 5; 11 V.I.C. § 404.)

Now, it has been argued by counsel for the defendant here that the payment of this $10,000.00 by the individuals concerned was a part payment of the purchase money, but even the defendant in his signed note does not acknowledge it as the payment of purchase money, but he acknowledges it as a loan with a lien upon the property to be repaid upon demand; that it is his written instrument. If it were, as he testified, not a loan, but a down payment on the purchase price, then he would be, in effect, varying the terms of the written instrument which he executed. His own written instrument executed by him shows it to be a loan secured by a lien upon the property.

It is the finding of the Court, therefore, that the defendant, Jerome Solomon, is indebted to the plaintiffs in the sum of $10,000.00 plus costs and reasonable attorneys' fees which I will fix at a later date. Further, that the said indebtedness is a lien upon the property in question, as to defendant Solomon.

The Court also finds that as between defendant Solomon and defendant Byers that the indebtedness of the said defendant Byers in the sum of $8,421.28 plus accumulated interest, is also a lien upon the property in question as to defendant Solomon.

Now, we come to the question of which of these two obligations constitute a prior lien and which one a subsequent lien, and on that question the Court will grant time for counsel to submit briefs instead of making a finding at this time. If you wish to take exception to any portion of the Court's ruling so far, you may do so now.

The Court will reserve ruling, only on the question of the priority of the two liens.